IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-CV-02112-RPM-MEH

RICHARD "CHANCE" LEOFF

    Plaintiff,

vs.

S AND J LAND COMPANY, a Colorado Limited Liability Company

    Defendant.

---

### DECREE OF DISSOLUTION AND ORDER OF SALE

---

The Court having presided over a November 22 to November 24, 2010 trial of this case, Plaintiff Richard "Chance" Leoff ("Leoff") and Defendant S and J Land Company ("S&J") having thereafter filed their respective post-trial pleadings with the Court and the Court having conducted a post-trial hearing on December 8, 2010, the Court finds and orders as follows:

1.    Pursuant to C.R.S. §7-64-202 and as acknowledged by both Leoff and S&J, the parties are partners in a partnership sometimes referred to in this case as the White House Partnership ("Partnership"). The Partnership has and is hereby decreed to be dissolved. This Court is retaining judicial supervision of the Partnership winding up and final judgment will not enter in this action until the Partnership property is sold, a full accounting under the Colorado Uniform Partnership Act (1997) is presented and the accounting approved by the Court. Other than the decree of dissolution and the order of sale as part of the winding up of the Partnership, the parties competing claims and

1

counterclaims and the judicially supervised final accounting will be resolved by a subsequent final judgment to be entered by this Court.

2. Winding up of the Partnership shall be in accord with Part 8 of Title 7, Article 64 of the Uniform Partnership Act (1997). Pursuant to C.R.S. §7-64-803 (1), S&J is appointed as the "winding-up" partner of the Partnership. No new Partnership business is to be undertaken by any partner, other than the sale and related actions authorized in this Order.

3. Pursuant to C.R.S §7-64-807(1), S&J is hereby ordered and authorized to make arrangements as soon as practicable for the sale of the following Partnership property, Parcel 3, Lot 40, Backman Village Subdivision, Town of Telluride, San Miguel County, Colorado ("The White House Property").

4. The White House Property shall be sold as follows:

   4.1. The White House Property is to be sold in its entirety *i.e.*, as a single property and not by individual condominium units.

   4.2. S&J shall make reasonable effort to schedule and conclude an auction sale of the White House Property by January 31, 2011. The auction will not occur if (subject to subsequent approval by the Court) the White House Property is sold before that time.

   4.3. Both parties are entitled and authorized to tender offers or bids at the auction to acquire the White House Property. Because S&J is already the record owner of the White House Property, if S&J is the high bidder at the auction, S&J shall be deemed owner of the White House Property, free of any interest of Plaintiff or the

Partnership without the need for S&J, as the winding up partner, to execute a deed to S&J, as the successful bidder at the auction.

4.4. All prospective purchasers of the White House Property shall be informed that the sale is pursuant to a Court Order of Sale and that the Property title is free and clear of the liens and other documents recorded by Leoff relative to the White House Property.

5. S&J is authorized to follow the general sale and auction procedures outlined in S&J's attachments to S&J's Closing Argument brief [Doc 138] as Appendix 1, "White House Auction" [Doc 138-1] and Appendix 2, "Outline of Auction Procedures" [Doc 138-2]. S&J is specifically authorized to employ Mr. Teddy Errico of Telluride Real Estate Corporation as the listing broker and the manager of the auction.

6. To the extent the listing broker recommends or circumstances arise which require additional or alternative sale and auction procedures, S&J is authorized to implement such additional or alternative marketing and auction procedures in addition to, or instead of, those described in paragraph 5 above, provided that: (a) S&J at all times follows commercially reasonable procedures in selling the White House Property; (b) the listing broker (Mr. Errico) contemporaneously informs S&J and Leoff and his counsel, in writing, of the proposed additional or alternative actions; and (c) if either S&J or Leoff question or disapprove of the additional or alternative procedures, they shall immediately meet (personally or conference call) with selling broker to resolve any issues. If the parties are still unable to agree on such suggested additions or alternatives, they shall present their position to Magistrate Judge Haggerty who is hereby authorized to resolve such disagreements on an expedited basis so as not to delay the auction date.

7. All Leoff claims against Alpine Bank, NA ("Bank") were previously dismissed with prejudice. Therefore, the Bank's deed of trust remains a valid and enforceable encumbrance on the White House Property. S&J, as the record owner of the White House Property and grantor in the Bank's deed of trust, is currently personally obligated on the Bank's deed of trust.

7.1 S&J, as the winding up partner, cannot transfer unencumbered marketable title to a purchaser of the White House Property (or enjoy unencumbered marketable title should S&J be the high bidder) unless the minimum sale price for the White House Property (for an auction or any Court approved private sale) is in an amount equal to or greater than the Bank loan pay-off (as of the date of the sale), plus customary seller closing costs, including real estate brokerage fees. Therefore, the selling broker is authorized to establish such a minimum auction price.

7.2 If S&J is the high bidder at the auction, S&J need not deed the White House Property to itself (recognizing that record title is already held in the name of S&J). Under such circumstances, without the need for a further deed, S&J shall be deemed to posses title equal to the marketable title any other purchaser would have enjoyed, but subject to S&J (as the current obligor on the Bank encumbrance) continuing to be obligated to pay the Bank debt according to the terms of the Bank loan documents. S&J, as the borrower, currently and personally obligated to pay the Bank debt, is authorized to bid at the auction up to the amount of the Bank debt upon presentation of written evidence from the Bank that S&J remains personally liable for payment of the Bank debt.

7.3 If anyone other than S&J is the high bidder at the auction, at the closing the purchaser shall pay the bid amount and customer buyer closing costs in certified funds and S&J shall execute a special warranty deed in favor of the purchaser, subject only to such restrictions, easements, plat provisions, covenants and rights of way of record, but free of any claims of Leoff, and free of the Bank encumbrance which shall be paid in full from cashier funds due at closing from the successful purchaser. S&J shall deposit all remaining net sale proceeds into the Court to be included in the subsequent final partnership accounting.

8. Leoff is ordered to cooperate and not interfere with S&J's actions as outlined above. Leoff, however, reserves his right to appeal the order of sale and all parties reserves all rights to challenge and appeal the accounting which will be part of the final judgment entered in this action.

9. Until such time as the White House Property has been sold, and the sale approved by the Court, the Court is not approving "winding up" activities beyond the sale proceedings set forth above relative to the White House Property. Nor is the Court ruling upon the party's competing tort and/or statutory claims for relief, such ruling to occur subsequent to the sale of the White House Property and S&J's filing of a report of sale.

10. Prior to and during the course of this litigation, Leoff or persons acting on his behalf recorded with the Clerk and Recorder of San Miguel County, Colorado, liens and multiple other statements or documents relative to the White House Property. These documents included but may not be limited to recording the Management Agreement (Reception Number 401015); Reception Statement of Lien (Reception Number 402950); Amended Statement of Lien (Reception Number 404773); and Lis Pendens (Reception

Number 407410). By order of this Court, each and every one of these documents and instruments and all other documents placed of record by Leoff or his agents relative to the White House Property are hereby released of record, cancelled and declared null, void and of no further validity as notice of claims, lien, restriction, reservation or as affording Leoff any interest whatsoever in the White House Property. From and after this date, Leoff possesses no interest in the White House Property and any owner of the White House Property shall enjoy title free and clear of Leoff claims and free and clear of any claim, interest or right associated with recorded documents filed by Leoff. To the extent required by any title insurance company as a condition to insuring marketable title to the White House Property, Leoff shall promptly, prior to the auction sale, sign such disclaimer, quitclaim deed, release or other document reasonably requested by a title company as a title requirement necessary to satisfy any title company's underwriting requirements.

    11. As part of the judicial supervision of the Partnership dissolution, S&J shall file a report of sale with the Court within fifteen (15) days following the auction (or any private sale approved by the Court and occurring prior to and in place of the auction). The report shall set forth the sale price, the expense of sale and the net proceeds being deposited into Court for purposes of the C.R.S. §7-64-807 partnership accounting provisions. Within fifteen (15) days of the filing of the Report, each party may submit a proposed final Partnership accounting setting forth their contentions regarding application of the Uniform Partnership Act (1997) provisions for the final accounting necessary to terminate the White House Partnership, plus statements concerning any impact the sale has had on the parties' tort and statutory claims.

12. The Court is entering the attached "Memorandum of Court Order" for recording (to satisfy title company concerns) and for presentation to the selling broker (to assure prospective buyers that marketable title exists relative to the White House Property).

Dated this 21st day of December, 2010.

BY THE COURT

*[signature]*

Richard P. Matsch, Senior District Judge

## Appendix 1 to S&J Closing Argument Brief

## <u>WhiteHouse Auction</u>

<u>Goal:</u> To auction off the WhiteHouse project in Telluride, Colorado as a whole 9 unit complex to the highest bidder:

<u>Cost of Auction:</u> 2.5% commission of the winning bid to be paid to Buyer's Agent at closing and delivery of deed to Buyer. An addition 1.0% of the winning bid to be paid to Auction Agent to cover advertising costs, handle showings and bids, deliver offers, coordinate due diligence, and work with local title company.

<u>Advertisement of Auction and Cost:</u>

1) MLS Listing in Telluride Colorado: The MLS advertisement gets the attention of the 185 Real Estate Brokers in the Telluride region to present this to their client base. Date of placement December 13, 2010 enabling one full month of advertisement.

2) Website Advertising: Creation of a specific website with details of the property, terms, and increased traffic. This will be advertised on www.TeddyErrico.com, www.gotelluride.com and www.TellurideRealtors.com . Completion: December 17, 2010

3) Periodical advertising: Four half page ads in the Telluride Daily Planet, One on December 15, two over the busy New Years Week (December 27-31)time period and one 4 days prior to auction deadline estimated at 5 pm on January 14, 2011. One classified ad in the Denver Post, and if deadlines permit, a classified ad in the Wall Street Journal.

4) Open House Tour /Inspection Dates, by appointment only through Auction Agent for any prospective Buyers held on December 22, and January 5, 2011. (subject to current lease agreements with tenants, if any)

5) E-mail solicitation to all Telluride Real Estate brokers on December 15, 2010 December 29, 2010 and January 12, 2011.

<u>Bid Procedure:</u> All bids will be submitted to Auction Agent in writing on a state of Colorado Real Estate Contract form and must be accompanied by a proof of funds letter or loan pre-approval letter.



APPENDIX 1

## Appendix 2 to S&J Closing Argument Brief

## Outline of Auction Procedures

The following concepts are proposed for Court consideration, with the proviso that the winding up partner requests authority to implement such reasonable steps as are necessary to implement the auction procedures recommended by professional realtors. Such flexibility will enable the winding up partner to address routine auction questions and procedures in a timely manner.

1. Teddy Errico shall be retained to manage the auction process in accord with his marketing plan (see Appendix 1). S&J shall be the partner with authority to contract with and direct Mr. Errico's actions. S&J shall copy Plaintiff on all directives given to Mr. Errico.

2. After the Court orders the auction sale and orders the discharge and voiding of all instruments recorded by Plaintiff against the White House property, a title insurance commitment shall be order to insure S&J's ability to convey marketable title. The winding up partner shall be authorized to take such steps as are reasonably necessary to secure marketable title.

3. Up until 10 days before the auction sale date, the Plaintiff and S&J shall be entitled to exchange "buy/sell" offers to the other party in an attempt to avoid the need for an auction. Either party is entitled to request the assistance of the Magistrate Judge assigned to this case, if necessary to implement or reach agreement on such offers.

4. Should a dispute arise between the parties relative to any procedure of the auction process, the Magistrate Judge shall be given authority to resolve the issue upon such notice and terms as the Magistrate Judge deems proper.



APPENDIX 2

1

5. The auction will be scheduled with at least 4 weeks prior written notice to Plaintiff, with Mr. Errico's dates in Appendix 1 adjusted, as needed, depending on when the Court enters an order authorizing an auction sale.

6. In addition to, but not in conflict with, any partner can supplement the advertising that Mr. Errioco will be doing per Appendix 1.

7. After the sale, the winding up partner shall prepare a report of sale reporting to the Court and the other partner the amount of the sale, the amount paid/due to the Bank and the amount of the sales and closing costs. The balance of the sale proceeds (after paying Bank debt and sales costs) shall be deposited into the registry of the Court, pending Court approval of a final accounting from the winding up partner.

8. The winding up partner shall prepare an accounting showing any unpaid third party obligations of the White House partnership, the parties' respective capital accounts, and partner loans to the partnership. This information shall be filed with the Court and the other partner for Court review and approval of a final accounting. The accounting will be presented by formal motion. The other party shall have the standard response time for the motion.

9. S&J requests such suggestions as Plaintiff believes are reasonable to achieve the goal of a successful and timely auction so as to facilitate the final termination of the White House partnership.