IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No.  08-cv-02112-RPM

RICHARD (Chance) LEOFF,

    Plaintiff,

v.

S AND J LAND COMPANY,
a Colorado Limited Liability Company,

    Defendant.
_____

PROPOSED RULING
_____

Given the difficulties that have arisen in this civil action after withdrawal of Jay Horowitz as Plaintiff's counsel, it is this Court's view that to comply with the mandate of the Tenth Circuit Court of Appeals remanding this case for further proceedings on two issues, the most efficient procedure is to issue this Proposed Ruling and provide the parties an opportunity to file objections with briefs supporting those objections.

The provisions in the Management Agreement that formed the basis for the legal conclusion that Leoff and S & J Land Company were in a partnership for the construction and development of the condominium units known as the White House Project is this language:

> It is agreed that Duty 1, as specified above, has been completed and that Leoff is entitled to 30% of all profits or losses of S & J, as defined in III - R of the Operating Agreement of S & J, and to be distributed as per Section 6 in the same agreement.

Plaintiff's Exhibit 12.

The agreement referred to is entitled Development Agreement and Operating

Agreement of S & J Land Company.  Plaintiff's Exhibit 11.  It is the formative document for S & J as a Colorado limited liability company with Stephen Finger and Jeffrey Lehrer as members and gives them authority and responsibility for overseeing the construction and completion of The White House Condominiums as the stated purpose of the company.

 Article III, Definitions in paragraph R reads:

> R.  "<u>Net</u> <u>Profit</u> <u>and</u> <u>Net</u> <u>Loss</u>" means an amount equal to the company's taxable income or loss for each fiscal year or other period, adjusted pursuant to this Agreement."

Plaintiff's Exhibit 11, p. 4.

These written documents are both dated March 14, 2006, but the Operating Agreement recites that it is made to be effective as of February 10, 2005.  In the factual findings from the trial in this Court's Memorandum Opinion and Order entered on June 3, 2011, Finger, Lehrer and Leoff had agreed to pursue this development project in 2004.  Finger purchased the land during that summer and the first public hearing before the Town Planning and Zoning Commission was held on June 10, 2004.  The written agreements were prepared in March, 2006, because Leoff was concerned about the informality of the venture and wanted some documentation.  He had no input into the Operating Agreement.  This paragraph from the previous findings is worth repeating.

> These two documents have confusing and inconsistent provisions which defy any attempt to define the relationship of the three "partners" and their respective obligations and interests in this development project.

Memorandum Opinion and Order, p.4 (Doc. 164).

Pursuant to this Court's Decree of Dissolution and Order of Sale, formally

dissolving the partnership, the condominium building was sold to S & J for $3,150,000, of which $3,050,505 went to pay off the bank loan.

The following finding of fact in this Court's Memorandum Opinion and Order is of critical importance to the task of a final accounting of the partnership as required by Colorado law.

> Accepting that the one paragraph of the Management Agreement created a partnership for a particular undertaking under the Colorado Uniform Partnership Act, S&J dissociated itself by engaging in conduct relating to partnership business which made it "not reasonably practicable to carry on the business of the partnership" with Leoff. C.R.S. § 7-64-601(1)(e)(III). The effect of that dissociation by one of the two partners resulted in a dissolution of the partnership under § 7-64-603, which was formalized by this court's Decree of Dissolution. In practical effect the partnership ended when construction began.

Memorandum Opinion and Order, p. 14 (Doc. 164).

That finding was not affected by the Order and Judgment of the Tenth Circuit Court of Appeals. It was not mentioned. The appellate court directed this court to proceed to conduct a final accounting pursuant to C.R.S. § 7-64-807. Paragraph (2) of that statute reads as follows:

> (2) Each partner is entitled to a settlement of all partnership accounts upon winding up the partnership business. In settling accounts among the partners, the profits and losses that result from the liquidation of the partnership assets shall be credited and charged to the partners' accounts. The partnership shall make a distribution to a partner in an amount equal to any excess of the credits over the charges in the partner's account. A partner shall contribute to the partnership an amount equal to any excess of the charges over the credits in the partner's account.

The only partnership asset was the White House Condominiums and S & J seeks to recover losses after the preparation of partnership tax returns. In the Proposed Procedures on Remand, filed on February 20, 2013, (Doc. 193), S & J proposed the

following:

> Documents establishing the taxable income or loss for each fiscal year, costs of winding up and equalization of capital accounts per C.R.S. 7-64-807, will be produced (such information being identical for the White House Partnership and S & J because S & J's only asset and only business is the White House project).

Proposed Procedures on Remand, ¶ 5.3 (Doc. 193).

In a memorandum by plaintiff in response to the defendant's proposal,[1] Mr. Horowitz, as counsel for Leoff, pointed to this Court's finding, quoted above, that in effect the partnership ended before construction began. Accordingly, the winding up should be based on the profit or loss of S & J as of the date construction began, May, 2007.

In its reply[2] S & J insists that the partnership continued until the Decree of Dissolution and Order of Sale, entered on December 21, 2010 (Doc. 147).

In its finding this Court referred to C.R.S. § 7-64-601(1)(e)(III) which reads as follows:

> (1) A partner is disassociated from a partnership upon the occurrence of any of the following events.
>
>    (e)(III) The partner engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with the partner.

It is not necessary that the conduct of Finger and Lehrer be determined to be wrongful to apply this statute. The evidentiary record from the trial supports this finding.

---

[1] Plaintiff Richard "Chance" Leoff's Memorandum in Response to Defendant S & J Land Company's Proposed Procedures on Remand (Doc. 196).

[2] Reply Concerning Proposed Procedure on Remand (Doc. 197).

From the beginning of construction Leoff was effectively excluded from the management of this development. He was no longer treated as a partner in the project.

Leoff had received $50,000 as an advance in anticipation of profits. There were no profits before disassociation and he will be required to repay that and any other amounts he received. Just as this partnership was formed by operation of the Colorado statute so it was terminated by that statute. The events occurring after May, 2007, are irrelevant to the final accounting.

The mandate also requires this court to award a reasonable attorney's fee for the services resulting in removal of the mechanic's lien on the White House property by granting the defendant's motion for partial summary judgment on June 1, 2009. The applicable statute is C.R.S. § 38-22-128, reading as follows:

> Any person who files a lien under this article for an amount greater than is due without a reasonable possibility that said amount claimed is due and with the knowledge that said amount claimed is greater than that amount then due, and that fact is shown in any proceeding under this article, shall forfeit all rights to such lien plus such person shall be liable to the person against whom the lien was filed in an amount equal to the costs and all attorneys' fees.

The literal language does not fit this case because the invalidity of the lien was because of the status of Leoff as a partner, not that the amount was excessive. It is applicable because any amount would be excessive if there is no valid basis for claiming the lien. The purpose of the statute is to compensate the title holder for the cost of removing an impediment to title. To determine the amount of the award, S & J should submit the billing for fees and costs paid for those legal services attributable to the submission of the motion for partial summary judgment. It is now

ORDERED, that the parties shall have to and including March 3, 2014, within

which to file objections and supporting briefs to this Proposed Ruling. If no objections are filed, an order will enter directing further filings in accordance with these rulings.

DATED: February 6th, 2014

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge